J-S56005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD ALLEN CONAPITSKI | |
| Appellant | No. 89 MDA 2014 |

Appeal from the Judgment of Sentence December 17, 2013
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0000745-2013
CP-54-CR-0000746-2013

BEFORE: PANELLA, J. WECHT, J. and PLATT, J.[*]

MEMORANDUM BY PANELLA, J. **FILED OCTOBER 29, 2014**

Appellant, Edward Allen Conapitski appeals from the judgment of sentenced entered on December 17, 2013,[1] in the Court of Common Pleas of Schuylkill County. We affirm.

On February 28, 2013, Officer Raymond Tonkinson of the West Mahanoy Township Police Department was dispatched to 86 Mount Olive Boulevard for a report of a burglary in progress. *See* N.T., Jury Trial, 10/29/13, at 58. Officer Tonkinson responded very quickly as he was in the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Conapitski appeals only from his convictions related to docket number CP-54-CR-0000746-2013 in connection with the Mount Olive Boulevard property. Conapitski is not appealing the related burglary case at docket number 54-CR-0000745-2013, which was consolidated for trial.

area. *See id*. Upon arrival, Officer Tonkinson observed a white Subaru parked on the side of the road and a male, whom he recognized as William Conapitski, standing next to it. *See id*., at 59. Conapitski was seated in the driver's side of the vehicle. *See id*., at 60.

Officer Tonkinson went to speak with Peter Lindenmuth, the individual whom had called 911 to report the break-in. Lindenmuth informed Officer Tonkinson that he was the owner of 84 Mount Olive Boulevard. *See id*., at 40. The property is a "half a double," adjoined by 86 Mount Olive Boulevard. *Id*. Lindenmuth stated that an elderly couple owned that property and that it was presently unoccupied as its owner was in a nursing home. *See id*. Lindenmuth testified that at approximately 8:15 PM, he "heard loud noises next door," recalling, "it sounded like someone was wrecking the place literally." *Id*., at 41.

According to Lindenmuth, he then went out onto his front porch "reached over the railing" and "banged on the front door." *Id*., at 42. Lindenmuth stated that he yelled "whoever is in there had better get out because I'm going to call the police." *Id*. Having received no response he "banged on the door again and with that someone moved the curtain on the front door and looked out at [him]." *Id*. Lindenmuth immediately returned to his residence and called 911. While on the phone, he observed "out the rear window someone backing out with a car behind the neighbor's garage." *Id*., at 43-44. The vehicle traveled up the dirt road, turned out onto the highway, stopped, and pulled over off to the side. *See id*., at 45-46.

After speaking with Lindenmuth, Officer Tonkinson returned to the white Subaru. Upon approaching the vehicle, he "noticed an aluminum gutter in the back of the vehicle" after which he asked Conapitski to exit the vehicle. *Id*., at 60-61. When Chief Tray and Lieutenant Keppel arrived from the Shenandoah Police Department, Officer Tonkinson went to search the property at 86 Mount Olive Boulevard. *See id*., at 61. Officer Tonkinson observed a "set of footprints" in the snow "walking towards the house." *Id*. A similar set of footprints was discovered "walking away from the house back to the area where [the] vehicle was parked." *Id*., at 62. When he reached the back porch, Officer Tonkinson noticed "that the window on the back door had been broken and the door was ajar." *Id*. Inside the residence, Officer Tonkinson found "a pile of copper." *Id*. When he went upstairs, a bathroom sink was on the ground and the copper had been "pulled out from the walls." *Id*. Officer Tonkinson then returned to Conapitski and examined his footprints. After noting the similarities to the footprints traced in the snow, he arrested Conapitski.

During questioning, Conapitski admitted to Officer Tonkinson that "he went in the residence to take the copper for extra money." *Id*., at 66. Conapitski told Officer Tonkinson that "he did not break in, the window was already broken when he went in the residence" and, further, that he thought the house was abandoned. *Id*., at 66-67. Conapitksi also stated that he had "picked [the aluminum gutter] up from outside." *Id*., at 67.

Following a jury trial on October 28, 2013, Conapitski was found guilty of burglary, criminal trespass, theft by unlawful taking, and possessing an instrument of crime. The trial court later sentenced Conapitski to an aggregate period of 4 to 8 years' imprisonment. This appeal followed.

On appeal, Conapitski challenges the sufficiency of the evidence for the burglary conviction. We utilize the following standard of review in considering this claim.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In apply [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by a fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Muniz*, 5 A.3d 345, 348 (Pa. Super. 2010) (internal citations and quotations omitted), *appeal denied*, 19 A.3d 1050 (Pa. 2011).

"A person is guilty of burglary if, with the intent to commit a crime therein, the person … enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight

accommodations in which at the time of the offense no person is present[.]"
18 PA.CONS.STAT.ANN. § 3502(a)(2).

Conapitski admits that he entered the property located at 86 Mount
Olive Boulevard on February 28, 2013, through a window, with the intent to
"take the copper for extra money." N.T., Jury Trial, 10/28/13, at 66. He
argues, however, that the evidence was insufficient to sustain his conviction
for burglary as the property was abandoned, as it had no heat, running
water, or electricity.

Section § 3502(b) provides a "defense to prosecution for burglary" if
"the building or structure was abandoned." 18 PA.CONS.STAT.ANN. § 3502(b).
***See also Commonwealth v. Rolan***, 549 A.2d 553, 559 (Pa. 1988) ("[I]f a
person can demonstrate that the building or structure was abandoned at the
time of the illegal entry, a successful defense to a burglary prosecution may
be offered.").

In ***Commonwealth v. Henderson***, 419 A.2d 1366 (Pa. Super. 1980),
this Court examined the definition of abandon. The panel noted:

> Webster defines abandon as 1) to forsake entirely; as, to
> abandon a hopeless enterprise 2) to renounce and forsake; to
> leave with a view never to return. Thus a building that has been
> abandoned is one that is wholly forsaken or deserted. Webster's
> New Twentieth Century Dictionary, Unabridged, Second Edition,
> (1979).

***Id***., at 1367. Similarly, this Court has observed, "[t]o abandon is totally to
withdraw ourselves from an object; to lay aside all care for it; to leave it

altogether to itself." ***Commonwealth ex rel. Lamberson v. Batyko***, 43 A.2d 364, 365 (Pa. Super. 1945) (citation omitted).

Thus, an unoccupied house is not necessarily abandoned. Instead, the circumstances must indicate that the owner has completely forsaken the property and has no intention of returning to it. Likewise, a piece of movable property is not abandoned if it is located inside a building that is not abandoned.

Here, the property was merely unoccupied at the time Conapitski entered it without permission; it was not abandoned. Jerome Paulukonis testified that his mother owns the property located at 86 Mount Olive Boulevard. ***See*** N.T., Jury Trial, 10/28/13, at 37. Paulukonis's elderly mother was placed in Shenandoah Manor, a nursing home, and his sister, Lorraine Paulukonis-Quintinsky, is the primary caretaker of the property. ***See id***., at 39. Both Paulukonis and his sister have keys to the residence and neither gave anyone permission to enter their mother's home. ***See id***., at 38.

While the property may have been unoccupied by its owner at the time of the unlawful entry, it was not by any means completely forsaken or deserted. Rather, the property owner entrusted her daughter and son with its maintenance and upkeep. Accordingly, Conapitski's claim must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2014