J. S71012/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FREDERICK EMMANUEL JOYCE, | : | No. 195 MDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, December 31,2013,
in the Court of Common Pleas of Cumberland County
Criminal Division at No. CP-21-CR-0001515-2013

BEFORE: FORD ELLIOTT, P.J.E., PANELLA AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED FEBRUARY 02, 2015**

This is an appeal from the judgment of sentence entered in the Court

of Common Pleas of Cumberland County following appellant's conviction for

driving under the influence - general impairment, with refusal, 75 Pa.C.S.A.

§ 3802(a)(1), which resulted in a sentence of incarceration of not less than

90 days nor more than 6 months and a fine of $1,500. We affirm.

The trial court summarized the relevant factual background of this

matter as follows:

> On February 11, 2013, Corrections Officer
> Benjamin Miller was on duty securing the exterior of
> the Cumberland County Prison. <u>Notes of Testimony,
> In Re: Transcript of Proceedings Jury Trial</u>,
> October 29-30, 2013 at 29 (hereinafter "N.T. at
> ___"). During his rounds, Officer Miller observed a
> black truck drive into the employee parking lot of the
> Cumberland County Prison. N.T. at 33. The only

---

\* Former Justice specially assigned to the Superior Court.

access to this parking lot from that direction of travel is Claremont Road, a public roadway. N.T. at 62-63.

Officer Miller approached the driver's side of the vehicle, which was parked across multiple parking spaces. N.T. at 35, 86-87. The Defendant, Mr. Joyce, was the only person in the vehicle. N.T. at 46-47. When Officer Miller approached the vehicle, the Defendant appeared intoxicated based on Officer Miller's observations of slurred speech, incoherent story, and boisterous demeanor. N.T. at 39. After speaking with the Defendant, Officer Miller walked into the employee entrance of the building in order to locate his supervisor, Corporal Alleman. N.T. at 63. At this time, the Defendant had exited his vehicle but did not follow Officer Miller into the prison. N.T. at 47. Upon returning to his vehicle, the Defendant bent down beside the driver's side of his vehicle. N.T. at 96.

Officer Miller related the events to Corporal Alleman, who contacted Cumberland County Dispatch to report an intoxicated individual in the parking lot of the Prison. N.T. at 72. Officer Miller and Corporal Alleman then returned to the parking lot at about the same time that Middlesex Township Police Corporal Seibert arrived to speak with the Defendant. N.T. at 72-3. Upon arriving at the Defendant's vehicle, Corporal Seibert retrieved the vehicle's keys from the driver's side step bar, the same location the Defendant had been observed bending over prior to the Corporal's arrival. N.T. at 96.

Corporal Siebert, in speaking with the Defendant, immediately observed indications of intoxication such as red, glassy, and glazed over eyes, slurred speech, and a belligerent attitude. N.T. at 81. Corporal Seibert informed the Defendant that he was suspected of driving under the influence, which the Defendant denied. N.T. at 82. Throughout the conversation, [sic] Mr. Joyce maintained that a friend had driven him to the Prison, however he made inconsistent statements

regarding the gender of the friend. *Id. cf.* N.T. at 134. Regardless, Corporal Seibert then informed the Defendant that there were witnesses and cameras that had recorded the Defendant driving, to which the Defendant said "okay, then you got me, take me to jail." N.T. at 82.

While still in the parking lot, Corporal Seibert also smelled a strong odor of alcohol emanating from the Defendant, and observed bloodshot glassy eyes, slurred speech, and swaying in place as they conversed. N.T. at 97. These observations led Corporal Seibert to believe that the Defendant was unable to safely operate a vehicle. N.T. at 97. Corporal Seibert then requested the Defendant to submit to a field sobriety test as well as a blood test. N.T. at 83-5. The Defendant refused both. N.T. at 84.

Based on this interaction and Corporal Seibert's observations, the Defendant was placed under arrest for Driving Under the Influence. N.T. at 86, 96-98. The Defendant was then placed into Corporal Seibert's patrol car and driven to the Booking Center of the Prison to be processed. N.T. at 86. Once in the Booking Center, and in the presence of Booking Agent Fitzgerald, Corporal Seibert again requested the consent of the Defendant to obtain a blood sample, using the standard PennDOT form DL-26. N.T. at 88. The Defendant once again refused. *Id.* Booking Officer Fitzgerald corroborated Corporal Seibert's version of the events that took place inside the Prison in all respects. N.T. at 114-16.

Trial court opinion, 4/10/14 at 2-4.

On October 30, 2013, following a jury trial, appellant was found guilty of DUI - general impairment, with refusal. Appellant was sentenced on December 31, 2013. This timely appeal followed.

Appellant presents two issues for our consideration:

> I. DID THE COMMONWEALTH ESTABLISH BEYOND A REASONABLE DOUBT THAT APPELLANT FREDERICK JOYCE "DROVE" A VEHICLE?
>
> II. CAN DECLINING TO GIVE A BLOOD SAMPLE BE A "REFUSAL" WHERE NO REASONABLE BASIS EXISTED TO REQUEST CHEMICAL TESTING WHEN "DRIVING" WAS NOT ESTABLISHED?

Appellant's brief at 6.

Appellant's first issue on appeal challenges the sufficiency of the evidence, which we consider under a well-accepted standard of review.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by a fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Muniz***, 5 A.3d 345, 348 (Pa.Super. 2010) (internal citations and quotations omitted), ***appeal denied***, 19 A.3d 1050 (Pa. 2011).

Section 3802(a)(1) of the Vehicle Code, 75 Pa.C.S.A. §§ 101-9805, provides:

> **(a) General Impairment**
>
> > (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1). In order to be found guilty of DUI - general impairment, "the Commonwealth [must] prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

Instantly, appellant admits he was under the influence of alcohol. (Appellant's brief at 12.) Additionally, appellant does not dispute that his truck traveled on Claremont Road. (*Id.*) Appellant's argument centers on whether the Commonwealth sufficiently established, through evidence and witness testimony, that appellant was the singular person to operate or be in "actual physical control of the movement of [his] vehicle" the evening he encountered Officer Miller making the rounds, and later Corporal Seibert. (*Id.* at 12-13.)

> The term "operate" requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. Our precedent indicates that a combination of the following factors is required in determining whether a person had "actual physical control" of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle.

*Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa.Super. 2005) (internal quotes and citations omitted).

Appellant attempts to argue that Officer Miller's ("Miller") testimony misidentifies him as the person driving the truck. This argument is without merit. At trial, Miller testified that he witnessed appellant's vehicle pull off Claremont Road and pull into the prison parking lot. (Notes of testimony, 10/29/13 at 31-33.) He further testified that he could see the driver of that vehicle motioning towards him in an effort to get his attention. (*Id.* at 31.) According to Miller, he stopped his security rounds, the vehicle pulled closer to him, and appellant rolled down the window and told Miller he was looking for his wife who was previously booked at the facility. (*Id.*) Miller was then asked, "Is the driver of that vehicle in court?" He responded, "Yes, sir" and pointed out appellant. (*Id.*) Miller's testimony that appellant was the driver of the vehicle that pulled into the prison parking lot was unequivocal.

Appellant's attempt to argue that Miller's testimony was somehow inconsistent is belied by the record. While testifying about his encounter with appellant, Miller was asked:

> [Prosecutor]: When [appellant] drove into this parking area and you encountered [appellant] --
>
> [Miller]: I approached him from the passenger's -- or from the driver's side of the vehicle.
>
> Q. From the driver's side of the vehicle.
>
> A. Yes, sir.

*Id.* at 35.

Clearly, Miller corrected himself while he was answering the question. Whether Miller approached from the driver's side or the passenger's side of the vehicle hardly makes a difference since Miller testified that appellant was the only occupant of the vehicle and appellant was in the driver's seat when the vehicle turned off Claremont Street into the prison parking lot.

In addition to Miller's testimony, video surveillance tape corroborated his testimony by showing that no one else exited the vehicle from the time it pulled into the parking lot. Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the totality of the evidence was sufficient to show that appellant exhibited actual physical control over his vehicle by driving the vehicle into the parking lot and being the only person in the vehicle throughout the encounter.

Next, appellant argues that declining to give a blood sample is not a "refusal" where no reasonable basis existed to request chemical testimony when "driving" was not established. (Appellant's brief at 19.) Appellant concedes that no chemical test occurred after appellant was requested to submit to one. (*Id.*) Appellant goes on to state: "*Even though* he perhaps imbibed 'a sufficient amount of alcohol,' 75 Pa.C.S.A. § 3802(a)(1), the Commonwealth did not establish he drove, operated, or was in 'actual physical control of the movement' of the truck." (*Id.* (emphasis in brief).)

As we have already determined there was indeed sufficient evidence to prove appellant was in actual physical control of the vehicle, this second argument is devoid of any merit.[1] Accordingly, we affirm appellant's conviction for DUI - general impairment.

Judgment of sentence affirmed.

---

[1] We note our review indicates there was sufficient evidence to show appellant knowingly and voluntarily refused Corporal Seibert's ("Seibert") request for a blood sample. Appellant was placed under arrest and taken to the booking center in the prison. Seibert testified he requested appellant's consent for a blood sample. (Notes of testimony, 10/30/13 at 84-88.) Seibert read the chemical consent form, DL-26, to appellant in the presence of Booking Agent Fitzgerald. (*Id.* at 88.) According to Seibert, appellant was belligerent, uncooperative, and "talked over" Seibert while he was reading the form to him. (*Id.*)

J. S71012/14

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 2/2/2015