J-S56004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| DEVIN PARKS | | |
| Appellant | | No. 3497 EDA 2015 |

Appeal from the Judgment of Sentence October 15, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012472-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| DEVIN PARKS | | |
| Appellant | | No. 3189 EDA 2016 |

Appeal from the Judgment of Sentence October 15, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0012473-2013
CP-51-CR-0012474-2013
CP-51-CR-0012475-2013
CP-51-CR-0012476-2013

BEFORE:  BOWES, STABILE, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:          **FILED SEPTEMBER 27, 2017**

* Retired Senior Judge specially assigned to the Superior Court.

Devin Parks appeals from the judgment of sentence of eleven months and fifteen days to twenty-three months imprisonment followed by five years probation. The trial court imposed the sentence after a jury convicted Appellant of three counts of receiving stolen property, and one count each of possession of an instrument of crime and false identification to a police officer. We affirm.

Appellant was charged with the above offenses at five different criminal actions, which proceeded to a consolidated jury trial. We rely upon the trial court's thorough recitation of the evidence presented by the Commonwealth:

> Philadelphia Police Detective James Brady, testified that on June 28, 2013, at approximately 12:30 a.m., he along with other officers, executed a search warrant for the premises [at a location on] Pine Street in the City and County of Philadelphia. (N.T., 7/15/15, pgs. 36, 37, 39) He described the premises as a typical two story row home with three bedrooms, on the second floor. (N.T., 7/15/15, pg. 40) On entering the premises he encountered an adult female, later identified as Samira Taylor, and . . . young children but no adult males. (N.T., 7/15/15, pg. 39) When he asked which room Ms. Taylor and Defendant occupied, he was directed to the second floor front bedroom. (N.T., 7/15/15, pg. 40) (N.T., 7/16/15, pg. 46)
>
> Detective Brady testified that on searching the front bedroom, he recovered a "black and tan Converse sneaker box," from below the floor boards of the closet, containing the 3 loaded hand guns, an empty box for a hand gun and numerous live rounds of ammunition of various calibers. In addition to the box, he also recovered various gun related items. (N.T., 7/15/15, pgs. 41-43, 49, 51, 58) He also recovered a Marshall's bag containing 100 to 150 clear, unused sandwich bags and a Whitman's sampler box containing two silver digital scales and various sized Apple brand heat sealable packets, "common for

packaging narcotics." (N.T., 7/15/15, pgs. 43, 44, 56, 57) In addition to recovering the guns and drug paraphernalia, he also recovered a jacket containing "three packets of what we believed at the time to be narcotics," which he believed to be an agent for cutting illegal drugs. The contents of the packets later proved not to be narcotic. (N.T., 7/15/15, pg. 44, 62)

He also testified that he recovered $424.00 in cash and two pieces of mail from a dresser in the bedroom. The recovered mail consisted of a letter from Bank of America and a letter from Target Card Services both of which were addressed to Defendant at that address. (N.T., 7/15/15, pgs. 46, 48)

Before leaving the premises, [but] after concluding the search, Detective Brady advised Ms. Taylor that he needed to speak to Defendant. Since Defendant did not come in to be interviewed, although someone identifying himself as Defendant may have called, Detective Brady secured a warrant for Defendant's arrest and distributed a "wanted poster" which he distributed to the local police district. (N.T., 7/15/15, pgs. 65, 66, 85)

As part of his investigation, Detective Brady contacted the National Crime Institute Center and learned that all three of the recovered guns had been reported stolen, as well as the gun identified on the empty box. He then spoke with each of the owners who confirmed that the guns had been stolen and that they had no knowledge of Defendant, and hadn't given him permission to possess the guns in question. (N.T., 7/15/15, pgs. 67, 68, 69-73, 86, 87)

Philadelphia Police Detective, Matthew Carey, testified that on June 28, 2013, he assisted Detective Brady in executing of the search warrant for the premises 5942 Pine Street. (N.T., 7/15/15, pg. 90) Corroborating Detective Brady's testimony, he testified that on entering the closet in the second floor front bedroom, he immediately noticed "a floor plank was missing from the bottom of the closet." He was able to easily remove additional pieces of the wood flooring to reveal the "Converse box," containing the guns, as well as the scales and additional drug paraphernalia. (N.T., 7/15/15, pgs. 91-93)

Philadelphia Police Officer, Eugene Roher, testified that on July 6, 2013, while in uniform on routine patrol with his partner, in a marked patrol car, he stopped a vehicle and immediately identified Defendant as the passenger. (N.T., 7/15/15, pgs. 106-107, 115) When he asked Defendant for identification, Defendant produced a "Pennsylvania ID card with the name of James Roderick Sherlock Jacobs, III . . ." which clearly did not fit his description. When asked: "Are you sure this is you?", Defendant responded "yes." (N.T., 7/15/15, pgs. 107, 110, 116) . . . .

After placing Defendant in the patrol car, Defendant remained silent when Officer Roher, checking the warrant database, brought Defendant's picture and arrest warrant up on the computer screen. (N.T., 7/15/15, pgs. 109, 111) It wasn't until Officer Roher had taken Defendant back to headquarters that he revealed his true identity. (N.T., 7/15/15, pgs. 111, 113, 118, 119)

Trial Court Opinion, 9/21/16, at 4-6.

After he was sentenced, Appellant filed a *pro se* appeal at 3497 EDA 2015. That notice of appeal did not include four of the docket numbers that were encompassed by the jury trial. Appellant, pursuant to a timely PCRA petition and with the Commonwealth's assent, was granted permission to file an appeal *nunc pro tunc* at the four other docket numbers. The appeal at 3189 EDA 2016 followed. The two appeals were consolidated for our review. Appellant raises these averments:

A. Did the Commonwealth fail to present sufficient evidence that Appellant possessed the firearms at issue or had the necessary 'guilty knowledge' needed to be convicted of Receiving Stolen Property?

B. Did the trial judge commit prejudicial error by participating in the cross-examination of a crucial defense witness without giving

- 4 -

trial counsel an opportunity to object outside the presence of the jury?

Appellant's brief at 4.

Appellant's first position is that there was insufficient evidence to support his three convictions for receiving stolen property with respect to the guns. Since a challenge to the sufficiency of the evidence raises a question of law, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Giron**, 155 A.3d 635, 638 (Pa.Super. 2017).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. **The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence**. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Fitzpatrick**, 159 A.3d 562, 567 (Pa.Super. 2017) (emphasis added; citation omitted).

The crime of receiving stolen property is defined as follows:

> **(a) Offense defined.**—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property

of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a). Accordingly, the elements of the crime of receiving stolen property include "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa.Super. 2015).

Appellant first contests that the evidence established the first element, *i.e.*, that he was in possession of the guns. Appellant herein was not found in actual possession of the three weapons; consequently, the Commonwealth had to prove that he constructively possessed them. In Pennsylvania,

constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Muniz*, 5 A.3d 345, 348–49 (Pa.Super. 2010) (citation omitted); *accord Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa.Super. 2013) ("In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control."). The intent to exercise control over

a piece of contraband can be proven by circumstantial evidence and all the circumstances in question. *Muniz*, *supra*.

In this case, when police arrived at the Pine Street location to execute the warrant, Ms. Taylor greeted them and said she had lived there with Appellant for five years. When asked where Appellant's bedroom was located, she directed them to the room where the guns were found and where mail addressed to Appellant was discovered. After Detective Brady uncovered the three guns, he confronted Ms. Taylor, who denied any knowledge of those items. Thereafter, Appellant refused to meet with police and concealed his identity when eventually apprehended. Given these facts and circumstances, we conclude that there was sufficient evidence to sustain the jury's determination that Appellant possessed the three guns. *Harvard*, *supra*; *Muniz*, *supra*.

Appellant also maintains that the evidence was insufficient to establish that he knew or believed that the guns were probably stolen. As to this element of the crime in question, we observed in *Robinson*, *supra* at 265:

> Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

In this case, it was stipulated that all three weapons were stolen and that Appellant did not have the owners' permission to be in possession of them. The fact that Appellant possessed multiple items of stolen property supported the jury's finding that he knew or believed that the guns were probably stolen. The stolen items in question were guns, and Appellant did not have a license to carry any of them, which also is probative of his knowledge that they were probably stolen. Additionally, the guns were hidden in a box underneath a board in the floor of the closet in the bedroom, which constituted additional evidence of guilty knowledge. Finally, Appellant was aware that he was wanted for questioning but failed to appear at the police station. Then Appellant deliberately hid his identity from police when apprehended. Given all of these circumstances, we conclude that the evidence adduced by the Commonwealth was sufficient to support the jury's determination that Appellant knew or believed that the guns were probably stolen.

Appellant's next averment is that the trial court erred when it "participated in the cross-examination of Appellant's mother and did not give defense counsel an opportunity to object to the questioning outside the presence of the jury." Appellant's brief at 15. As pointed out by the Commonwealth and acknowledged by Appellant, Appellant failed to object to the court's questioning. Thus, Appellant has waived this claim of error. *See Commonwealth v. Tucker*, 143 A.3d 955, 961 (Pa.Super. 2016) ("[T]he

failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Appellant suggests that the trial court had to *sua sponte* afford him the opportunity to object to its line of questioning outside of the presence of the jurors. However, Pa.R.E. 614(c) provides otherwise:

> **(c) Objections.** A party may object to the court's calling or examining a witness when given notice that the witness will be called or when the witness is examined. **When requested to do so**, the court must give the objecting party an opportunity to make objections out of the presence of the jury.

Pa.R.E. 614(c) (emphasis added).

Herein, Appellant merely had to ask to speak with the judge at sidebar, outside of the hearing of the jury. At sidebar, Appellant could have requested that the jurors be temporarily excused so that he could properly object to the questioning and a ruling on the objection could have been made for the record. Under the clear wording of the rule in question, a trial court was not obligated to provide a party the chance to object to its examination of a witness outside of the jury's presence unless the party requests that opportunity. Hence, Appellant's second averment is waived.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *9/27/2017*