J-S54011-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM DANIEL BROWN, JR. | : | |
| | : | |
| Appellant | : | No. 1725 WDA 2017 |

Appeal from the Judgment of Sentence October 24, 2017
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0001313-2016

BEFORE: PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY PANELLA, J. FILED NOVEMBER 26, 2018

William Daniel Brown, Jr., appeals from the judgment of sentence entered in the Blair County Court of Common Pleas following a jury trial. Brown challenges the trial court's denial of his pre-trial suppression motion. In light of our Supreme Court's decision in Commonwealth v. Romero, 183 A.3d 364 (Pa. 2018), we vacate the judgment of sentence, reverse the order denying suppression, and remand for a new trial.

On June 7, 2016, following the search of an attic where Brown was residing, Brown was arrested and charged with various drug offenses. Brown moved to suppress the evidence gained from the search, claiming that the illegal entry into the residence led to an illegal search of the attic. The court held a suppression hearing.

At the hearing, the Commonwealth presented the following evidence. In September of 2015, the State Board of Probation and Parole (the "Board")

issued an administrative action against Brown due to his failure to comply with the terms of his supervision. The action did not proceed against Brown until June 7, 2016, when parole agents received a tip from Blair County Children, Youth and Families ("CYF") that Brown was living, and selling drugs, out of a residence located at 2620 6th Avenue in Altoona, Pennsylvania. Based upon the tip, the Board sent State Parole Agents Brian Clawson and James Rucosky to the residence to arrest Brown. Agent Rucosky testified that while they did not have an arrest warrant for Brown, the administrative action declaring Brown delinquent was all they needed to detain him pursuant to the terms of Brown's parole.

Upon arrival, the state parole agents approached the residence with officers from Blair County Adult Parole and Probation. After knocking on the door, Agent Rucosky testified that one of the Blair County probation officers recognized the young woman who answered the door, Tricia Mitchell, and informed her that "we're coming in; we're looking for [] Brown." N.T., Suppression Hearing, 1/12/17, at 12. Mitchell admitted the state parole agents and probation officers (collectively, the "parole agents") into the residence and motioned that Brown was upstairs. The parties discovered Brown in a small room in the attic. While Agent Clawson was taking Brown into custody, Agent Rucosky scanned the room and observed, in plain view, a plate with a powdery substance, baggies, and a cutting tool atop it. After state

parole agents contacted Altoona Police to inform them of their discovery, they issued a warrant to commit and detain Appellant.[1]

Once Altoona Police officers responded to the residence, Brown admitted to the officers that all of the drug paraphernalia in the attic space belonged to him. A search warrant uncovered 103 packets of heroin, a plate with heroin residue on it, $736 in U.S. currency, and various packaging materials such as plastic baggies, rubber bands and rubber gloves.

Following the hearing, the suppression court concluded that, pursuant to Commonwealth v. Muniz, 5 A.3d 345 (Pa. Super. 2010), the state parole agents were only required to have an arrest warrant and a reasonable belief Brown was inside the premises to enter the residence. Because the trial court found the Commonwealth met these requirements,[2] it denied Brown's suppression motion.

Following a jury trial, Brown was convicted of possession with intent to deliver a controlled substance (heroin), possession of a controlled substance, and possession of drug paraphernalia. The trial court sentenced Brown to 30 to 60 months' incarceration. This timely appeal follows.

_____

[1] Agent Rucosky testified that because state parole does not need a warrant to detain an absconder, the warrant to commit and detain would likely have been created after Brown's arrest was noted in the computer system, as per standard procedure. See N.T., Suppression Hearing, 1/12/17, at 21-22.

[2] The parties do not dispute that the administrative action legally functioned as an arrest warrant in this matter.

On appeal, Brown argues the trial court erred in denying his pretrial motion to suppress.[3] Specifically, Brown argues that the parole agents unlawfully entered the residence without a search warrant. Therefore, he contends all evidence recovered from the subsequent search of the attic room must be suppressed.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." Commonwealth v. Wallace, 42 A.3d 1040, 1047-1048 (Pa. 2012) (citations omitted).

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Commonwealth v. Eichinger, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony.

---

[3] Brown also argues that the verdict was against the weight of the evidence at trial. However, due to our disposition of Brown's first issue, we did not reach this issue.

- 4 -

The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." Commonwealth v. Elmobdy, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted).

Brown challenges the parole officers' entry into the residence in order to arrest him. Generally, the police are required to obtain a search warrant before entering a residence. See Commonwealth v. Caple, 121 A.3d 511, 517 (Pa. Super. 2015). This requirement is subject to limited exceptions, which include consent and exigent circumstances. See Commonwealth v. Boyd Chisholm, ___ A.3d ___, ___, 2018 WL 5575649, at *3 (Pa. Super., filed October 30, 2018). Additionally, our Court has held that where the police have a "reasonable belief" that the subject of an arrest warrant lives at a particular address, even if they are mistaken in this belief, they can enter the residence to look for the subject of the warrant without first obtaining a search warrant for the address. See Muniz, 5 A.3d at 349-352. See also Commonwealth v. Romero, 138 A.3d 21, 25 (Pa. Super. 2016) ("Where authorities have a reasonable belief that the subject of an arrest warrant lives within a given premises, they can enter the home and arrest the suspect without a search warrant.")

However, our Supreme Court recently rejected this "reasonable belief" standard. The Court observed that "[t]he Fourth Amendment protects the privacy interests in all homes[,]" and, absent consent or exigent circumstances, "[t]o overcome that privacy interest, a warrant used to enter a home must reflect a magisterial determination of probable cause to believe

that the legitimate object of a search is contained therein." Romero, 183 A.3d at 403.

> [T]he central distinction between an "arrest warrant" and a "search warrant" is the identification of the particular person or place that the magistrate has found probable cause to seize or to search. If an arrest warrant is based solely upon probable cause to seize an individual, then it authorizes precisely that seizure. If entry into a residence is necessary to search for that individual, then the warrant must reflect a magisterial determination of probable cause to search that residence, regardless of whether the warrant is styled as an "arrest warrant" or a "search warrant." The critical inquiry is whether the warrant adequately addresses all of the Fourth Amendment interests that are implicated by the contemplated action.

Id. (footnote omitted).

Here, no magisterial determination of probable cause occurred. The administrative action, which served as the arrest warrant in this matter, does not list 2620 6th Avenue as Brown's residence. In fact, the action does not list any address. Instead, the only information as to how that address was obtained was an indication that Blair County CYF obtained a "tip" that Brown was living at, and selling drugs from, the residence. Accordingly, pursuant to Romero, without exigent circumstances or consent, the parole officers' entry into the home to arrest Brown was unlawful.

In response to the ramifications of Romero, the Commonwealth contends that Mitchell consented to the parole officers entering her home to search for Brown. See Commonwealth's Brief, at 20. However, there is no indication that the court expressly found that Mitchell consented to the parole officers entering her home. See Trial Court Opinion, 1/20/17, at 2 (finding

only that officers were "admitted" to the home by Tricia Mitchell"). And, the limited evidence presented at the suppression hearing related to consent does not lead us to a conclusion that Mitchell consented to the parole officers entering her home; it appears only that Mitchell was simply informed that the parole officers would be entering her home. See N.T., Suppression Hearing, 1/12/17, at 12 ("we're coming in; we're looking for [] Brown.").

Therefore, because we find no evidence of consent to justify the parole officers' unlawful entry into the residence, the evidence recovered during the subsequent search must be suppressed.[4]

Judgment of sentence vacated. Order denying suppression reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2018

_____

[4] We recognize that the administrative action utilized to arrest Brown differs substantially from the typical arrest warrant contemplated in Romero. However, as a panel of our Court found in Boyd Chisholm, "we are bound to follow Romero." ___ A.3d at ___, 2018 WL 5575649, at *8 n.15.