J-A30015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CARLOS CAEZ | |
| Appellant | No. 304 EDA 2014 |

Appeal from the Judgment of Sentence January 23, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010889-2010

BEFORE: MUNDY, J., JENKINS, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.: **FILED NOVEMBER 23, 2015**

Appellant, Carlos Caez, appeals from the January 23, 2014 judgment of sentence of 15 to 30 months of incarceration, imposed after the trial court convicted Appellant of theft and receiving stolen property.[1] After careful review, we affirm.

The trial court recounted the facts presented at trial as follows.

> On June 5, 2010, Ms. Dawn Stenslend-Mendte was living at 151 East Bells Mills Road in Philadelphia. After leaving a charity event, Ms. Stenslend-Mendte, her husband, and their two boys arrived at their home at approximately 10:00 p.m. Ms. Stenslend-Mendte had travelled home in her husband's leased Honda Odyssey minivan, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3921(a) and 3925(a), respectively.

parked it in the three car garage. Ms. Stenslend-Mendte testified she usually leaves the car unlocked, because it is inside a locked garage. Ms. Stenslend-Mendte and her husband went to bed around midnight and slept until 9 a.m., June 6, 2010. When Ms. Stenslend-Mendte woke up, she realized she had left her cellphone and purse in the minivan. Ms. Stenslend-Mendte entered the garage and observed the place had been ransacked, the large garage door was wide open, and the minivan was gone. The other vehicle in the garage, a Cadillac station wagon, had been ransacked but nothing was missing from it. Ms. Stenslend-Mendte testified several things were in the minivan when it was taken out of the garage, including: her iPhone, her purse, some sporting equipment for her kids, a George Foreman grill, and gym shoes for the kids. Ms. Stenslend-Mendte immediately called the police and filled out a report.

After the police left her property, Ms. Stenslend-Mendte realized there was a GPS on her cell phone she could use to track the phone's location. Ms. Stenslend-Mendte and her husband tracked the phone to the Hunting Park section of Philadelphia. Ms. Stenslend-Mendte and her husband drove approximately forty-five (45) minutes away to the Hunting Park location indicated on the GPS. Ms. Stenslend-Mendte observed the missing vehicle and immediately called the police again. The police arrived approximately twenty (20) to thirty (30) minutes later. Ms. Stenslend-Mendte and her husband waited for the police to arrive, making sure not to touch the vehicle, as to protect the crime scene per police orders. The minivan was located on a residential block, filled primarily with row-homes. Some items from the minivan were recovered, but not the iPhone or the children's sneakers. The vehicle was damaged internally and externally including: scrapes on the outside, scrapes on the inside dashboard, rips in the carpet, stains, and damage to a tire. Ms. Stenslend-Mendte testified the vehicle looked generally banged up and bumped and sustained approximately $5,000 worth of damage.

She testified the vehicle did not have any of the damage when she had seen it the night prior.

There was no damage to the ignition of the minivan. Ms. Stenslend-Mendte testified she didn't remember where she put her keys the night of June 5, 2010. She testified she typically keeps her keys in her purse while out and then places them on a hook inside her house upon entering. Ms. Stenslend-Mendte looked for the keys after she discovered the vehicle was missing but was unable to find them, and they were never recovered.

Ms. Stenslend-Mendte testified she did not know [Appellant], and she didn't believe her husband or children knew [Appellant]. Ms. Stenslend-Mendte didn't give [Appellant] permission to enter her house or enter her Honda Odyssey.

There was a stipulation by and between counsel that Officer Gomes would testify he responded to the original police call for the burglary and took information from Ms. Stenslend-Mendte and her husband about the theft of the minivan. Officer Gomes put out flash information describing the missing van and held the entire garage as a crime scene.

There was a stipulation by and between counsel that Officer Nace would testify he responded to the second call from Ms. Stenslend-Mendte and went to 3861 North Eighth Street, Philadelphia, where he observed the stolen vehicle. There was a stipulation by and between counsel that Detective Brian Sanders would testify he was assigned to the burglary of 151 Bells Mills Road and subsequent theft of the Honda Odyssey minivan. Detective Sanders would testify he dusted for fingerprints inside the garage, outside the garage, and inside the Cadillac, without success. Detective Sanders would further testify he attempted to lift eight latent prints from inside the 2007 Honda Odyssey and successfully matched two prints to [Appellant]. Search warrants were then issued for the last known address of [Appellant], which was 4022 North Eighth Street.

> The prints were lifted from the inside passenger door handle and the navigation screen of the vehicle's GPS. Nothing was recovered [from] the burglary at [Appellant's] house.

Trial Court Opinion, 1/28/15, at 2-4 (citations to notes of testimony omitted).

Appellant was arrested and charged with the aforementioned crimes. A one-day bench trial convened on December 11, 2013, after which the trial court rendered its verdicts and sentenced Appellant to fifteen to thirty months of incarceration on each count to run concurrently, followed by two years of reporting probation. Appellant filed a post-sentence motion and motion to reconsider sentence on December 19, 2013, and after a hearing on January 23, 2014, the trial court amended Appellant's sentence such that the theft conviction merged with the receiving stolen property conviction for purposes of sentencing, although Appellant's sentence of fifteen to thirty months of incarceration remained unchanged. Appellant filed this appeal the next day.[2]

On appeal, Appellant presents a single issue for our review as follows.

> Was not the evidence insufficient as a matter of law to support convictions for theft and receiving stolen property where the only evidence implicating [A]ppellant in the theft was that his fingerprints were found on the interior, passenger side of a vehicle that had no visible indicators of having been stolen?

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant's Brief at 3.

Appellant challenges the sufficiency of the evidence to sustain his convictions. We are bound by the following standard and scope of review. "A claim impugning the sufficiency of the evidence presents us with a question of law." *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fabian*, 60 A.3d 146, 150-151 (Pa. Super. 2013) (citation omitted), *appeal denied*, 69 A.3d 600 (Pa. 2013). "This standard of deference is not altered in cases involving a bench trial, because the province of a trial judge sitting without a jury is to do what a jury is required

- 5 -

to do." ***Commonwealth v. Lee***, 956 A.2d 1024, 1027 (Pa. Super. 2008) (internal quotation marks and citation omitted), *appeal denied*, 964 A.2d 894 (Pa. 2009).

> However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the [finder of fact] of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted), *appeal denied*, 101 A.3d 102 (Pa. 2014).

The essence of Appellant's sufficiency argument is that the evidence established that he "was merely a passenger" and "never in possession or control of the van." Appellant's Brief at 7, 9-10. Appellant maintains that "mere presence in a stolen vehicle as a passenger is insufficient to sustain convictions for either theft or receiving stolen property." ***Id***. at 13. Upon review, we find Appellant's argument to be unavailing.

The theft statute provides as follows.

### § 3921. Theft by unlawful taking or disposition

**(a)** **Movable property**.--A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a).

The receiving stolen property statute provides as follows.

**§ 3925. Receiving stolen property**

**(a) Offense defined**.--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

**(b) Definition**.--As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

*Id.* § 3925.

The trial court, sitting as the fact-finder in this case, explained its reasoning with regard to its theft verdict as follows.

> There is sufficient circumstantial evidence to prove [Appellant] unlawfully took the complaining witness's vehicle. Ms. Stenslend-Mendte testified that neither she, nor any other member of her family, knew [Appellant] or gave him permission to enter the vehicle. [Appellant's] fingerprints were found inside the vehicle in two places. The vehicle was found less than eighteen hours after Ms. Stenslend-Mendte had last seen it. [Appellant] lived a short distance from the location where the stolen vehicle was found. The cell phone's GPS led Ms. Stenslend-Mendte and her husband to the area where the vehicle was abandoned, but the cell phone was never recovered, thus the cell phone must have been in the immediate area of the vehicle. It is clear from this combination of evidence that [Appellant] took the vehicle from Ms. Stenslend-Mendte's garage. The logical conclusion is [Appellant] was involved in the theft of the vehicle.

Trial Court Opinion, 1/28/15, at 5-6.

Relative to the receiving stolen property verdict, the trial court further explained as follows.

> There is sufficient evidence to sustain a conviction of receiving stolen property. The evidence clearly indicates the property was stolen. Ms. Stenslend-Mendte testified credibly that she woke up to discover a ransacked garage with a vehicle and several other items missing, without her giving permission to anyone to use or remove said items.
>
> The evidence further indicated [Appellant] possessed the property. If the contraband is not found on the appellant's person, the Commonwealth must prove that the appellant had constructive possession … which has been defined as the "ability and intent to exercise control over the substance." ***Commonwealth v. Hutchinson***, 947 A.2d 800, 806 (Pa. Super. 2008). The Commonwealth may establish constructive possession through the totality of the circumstances. ***Commonwealth v. Muniz***, 5 A.3d 345, 349 (Pa. Super. 2010). Though the vehicle was not found directly with [Appellant,] the totality of the circumstances indicates [Appellant] had recently entered the vehicle, drove the vehicle with stolen keys, and never returned the keys. [Appellant's] intention was clearly to exercise control over the vehicle.
>
> The evidence sufficiently proves [Appellant] not only had reason to believe the vehicle was stolen but specific knowledge it was stolen. The evidence indicates, beyond a reasonable doubt, [Appellant] entered the garage of Ms. Stenslend-Mendte, and used her keys to drive the car away to a block near his home. As Ms. Stenslend-Mendte testified she didn't know [Appellant], it is clear [Appellant] would have no reason to believe he had permission to use the minivan he took from someone's attached garage.

Trial Court Opinion, 1/28/15, at 7-8.

We have reviewed the notes of testimony from the trial, mindful that we may not weigh the evidence and substitute our judgment for the fact-finder, and the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *See Commonwealth v. Marrero*, 914 A.2d 870, 872 (Pa. Super. 2006) (holding where the appellant's fingerprints were located on the interior hood of a stolen car and engine was removed, the location of the prints was not susceptible to a reasonable inference of innocent contact, and affirming appellant's conviction of receiving stolen property). To reiterate, any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id*.

Instantly, the evidence adduced at trial, as recited by the trial court, supports the trial court's determination that Appellant was guilty of theft and receiving stolen property. Appellant cites *Commonwealth v. Henry*, 875 A.2d 302, 303-304 (Pa. Super. 2005) for the proposition that the evidence is insufficient to sustain a conviction for theft and receiving stolen property where "the only evidence implicating the defendant was a fingerprint found on a window placard inside the car." Appellant's Brief at 11. However, in the instant case, the record supports the trial court's observation that Appellant's fingerprints "were lifted from inside the passenger door handle **and the navigation screen of the vehicle's GPS**." Trial Court Opinion,

1/28/15, at 4 (emphasis added), *citing* N.T., 12/11/13, at 39 (parties stipulating that "one of the prints that came back to [Appellant] was recovered on the navigation screen located inside the Honda and the second print was located on the interior passenger-side door"); ***see also*** Commonwealth Exhibit C-7 (copies of Appellant's fingerprints recovered from the minivan). Contrary to ***Henry***, where a fingerprint was found on a window placard, the record in the instant matter supports the trial court's conclusion that "fingerprints were found inside the vehicle in two places." Trial Court Opinion, 1/28/15, at 5. The parties stipulated that Appellant's fingerprints were found in two locations, the passenger side door as well as the minivan's GPS. N.T., 12/11/13, at 37-40. The victim, Ms. Stenslend-Mendte, testified that the minivan's GPS had a "built-in GPS screen" that "came with the car" and was "built into the console." ***Id***. at 31. As such, the evidence was sufficient to find Appellant guilty of theft and receiving stolen property.

Given the foregoing, and with careful consideration of both the facts of record and prevailing case law, we conclude that Appellant's issue challenging the sufficiency of the evidence underlying his convictions is without merit. We therefore affirm the January 23, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judge Jenkins joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/23/2015</u>