J-S21039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL A. CINTRON, | |
| Appellant | No. 1380 EDA 2015 |

Appeal from the Judgment of Sentence April 24, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006164-2014

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED FEBRUARY 19, 2016**

Appellant Michael A. Cintron appeals the judgment of sentence entered by the Honorable Gregory M. Mallon on April 24, 2015, in the Court of Common Pleas of Delaware County.  Following our review of the record, we affirm.

The trial court[1] articulated the relevant facts and procedural history herein as follows:

> On July 4, 2014, Corporal Steven William Powers, an officer with the Glenolden Borough Police Department for almost 20 years,  was on duty in his semi-marked[1] police vehicle. N.T., 1/8/15, pp. 7-9. Corporal Powers was in full uniform and was parked in the lot of the  Glenolden Swim Club. *Id*. at 9. To his right was the area on South Avenue on which the violation giving rise to the probable cause to stop happened. In order to fullly

---

[1] As Judge Mallon served as both the suppression court and trial court below, we generally refer to the trial court for ease of discussion.

*Former Justice specially assigned to the Superior Court.

understand the basis for the stop, it is necessary to describe the roadway.

Heading west on South Avenue after leaving the Borough of Folcroft and then entering the Borough of Glenolden, the grade of South Avenue changes to a steep downward hill. *Id*. at 71-72. [sic] On this steep downward grade, South Avenue bends sharply to the left. The estimate of the bend to the left is between 70 to 90 degrees. *Id*. at 25, 90. [sic] At the bend is a concrete wall, which has been painted with reflective paint and has a fence. *Id*. at 26-27. The paint on the wall was described as a fluorescent, and was painted as such because of prior accidents in the area. *Id*. at 14.

It was on this roadway at approximately 11 P.M. on the evening of the Fourth of July 2014, while sitting in his patrol vehicle, that Corporal Powers heard a loud screech, then looked up and saw a white vehicle in the above described portion of South Avenue. Corporal Powers said he saw said white vehicle swerve to the left. *Id*. at 28-29. Corporal Powers also said that it appeared that the car was going straight to the fence line and then "all of a sudden jerked to the left."[2] *Id*. at 33. Corporal Powers pulled out of the swim club parking lot to follow the vehicle on South Avenue. He observed the vehicle as it continued down South Avenue and stop at a steady red traffic light at Chester Pike. *Id*. at 29. After the light turned green, the Appellant proceeded driving east on South Avenue for about an additional 1000 feet before he was pulled over by Corporal Powers. *Id*. at 29-31. At no point while Corporal Powers was following the Appellant did the Appellant do anything beyond what was already described above that would provide Corporal Powers any additional probable cause or reasonable suspicion to justify a car stop.

Corporal Powers approached the vehicle and spoke to the driver. The driver, the Appellant herein, provided his driver's license and told Corporal Powers that he had been working until 9:30 P.M. and had stopped for a beer on his way home. *Id*. at 36. The Appellant was very familiar with the area and told Corporal Powers that he had swerved because there was a pothole in the roadway. *Id*. at 35. Later that evening, Corporal Powers returned to area in question and did [ ] locate any potholes. *Id*. at 54. [sic]

Upon speaking to the Appellant, Corporal Powers observed that the Appellant's eyes were bloodshot and glassy. *Id*. at 35. When the Appellant produced his license, Corporal Powers smelled an odor of alcoholic beverage coming from the

Appellant's person. *Id*. at 35. Based upon his observations, Corporal Powers believed that the Appellant was incapable of safe driving and the Appellant was arrested for driving under the influence.

Appellant, through counsel, filed a pre-trial motion to suppress.[2] Following a hearing, the court denied Appellant's motion on February 9, 2015. A non-jury stipulated trial was conducted on March 27, 2015. At trial, the Commonwealth submitted the affidavit of probable cause and incident report, the notes of testimony from the Appellant's preliminary hearing, the notes of testimony from the Appellant's suppression hearing, and the results of the drug laboratory report in this case. Counsel stipulated as follows:

If called to testify at trial, Corp. Powers would opine that based on his extensive training and experience, the defendant was unable to safely operate a motor vehicle on the highways of the Commonwealth on July 4, 2014. Specifically, Corp. Powers has [ ] initiated thousands of traffic stops and has personally arrested individuals for Driving Under the Influence (DUI) more than three hundred (300) times. In the instant case, Corp. Powers would base his opinion regarding the defendant's inability to safely operate a motor vehicle on the following:

1. The unsafe manner in which the defendant was driving, including Corp. Power's observation of the defendant's car swerving,

2. The defendant's admission that he skidded and swerved while driving,

3. The odor of alcoholic beverage emanating from the defendant's person,

4. The defendant's glassy and bloodshot eyes,

5. The defendant's profuse sweating at the time of the stop, and

6. The defendant's admission that he had consumed at least one alcoholic beverage.

As a result of the traffic stop and Corp. Powers' belief that the defendant was incapable of safely operating a

_____

[2] Importantly, Appellant solely maintained therein that Corporal Powers' stop of his vehicle had been unlawful because he lacked reasonable suspicion to believe that Appellant had been driving under the influence of alcohol in violation of 75 Pa.C.S.A. § 3802.

motor vehicle on July 4, 2014, the defendant, Michael Cintron was arrested for Driving Under the Influence pursuant to 75 Pa.C.S.A. 3802(c). **The defendant hereby stipulates that Corp. Powers had probable cause to arrest him for Driving Under the Influence in this matter.**

The defendant was properly advised of his rights and consented to a withdrawal of two vials of blood at Taylor Hospital. On or about July 7, 2014, Daniel J. Lydon, of the Glenolden Borough Police submitted One (1) sealed Blood Alcohol Kit containing; (1.1) Whole blood specimen identified as collected from Michael Cintron, to the Lima Regional Laboratory of the Pennsylvania State Police Bureau of Forensic Services. The whole blood specimen contained in Item 1.1 was analyzed by Forensic Scientist Irina B. Aleshkevich. If called to testify, Ms. Aleshkevich would be qualified in the field of forensic science as an expert and would testify in that capacity to the result of her analysis, that Item 1.1 was analyzed using headspace gas chromatography and found to contain 0.204 plus or minus 0.009 gram% ethyl alcohol in whole blood.

*See* Stipulation dated 3/26/2015 [sic] [(emphasis added)].[3]

The court found Appellant guilty of driving under the influence, 75 Pa.C.S.A. § 3802(c). On April 24, 2015 Appellant was sentenced to an aggregate sentence of 90 days to 23 months and imposed a $1500 fine and $300 cost assessment. The Appellant was sentenced to 3 years of consecutive probation, and given credit for time served.[4]

On May 6, 2015, Appellant filed a notice of appeal necessitating this opinion. Following a directive from this court, Appellant filed a 1925(a) statement. Appellant sets forth the following issue in his Concise Statement of Matters Complained of on Appeal:

(1) The Commonwealth's evidence presented at the Suppression Hearing on January 8, 2015 was insufficient to establish probable cause for a Vehicle Code violation or reasonable suspicion that the defendant was Driving Under the Influence to justify the traffic stop.

_____

[1] Corporal Powers explained that a "semi-marked" police vehicle is "a slick-top police car. It has no external police lights outside. All the lights are inside. But it is fully marked Glenolden Police" N.T., 1/8/15, p. 9.

- 4 -

[2] On cross-examination counsel established that Corporal Powers did not observe the Appellant "skidding" but that the Appellant had told him that he skidded.
[3] The Commonwealth and defense also stipulated to the chain of custody.
[4] The Appellant's sentence was stayed pending this appeal. *See* Order dated 5/14/2015.

Trial Court Opinion, filed October 6, 2015, at 1-4.

In his appellate brief, Appellant presents three questions for our consideration:

> 1. Whether the trial court erred when it denied [ ] Appellant's motion to suppress, finding that Corporal Stephen Powers' observations were sufficient to enable him to have probable cause that [ ] Appellant was driving his vehicle in violation of § 3361 ("Driving vehicle at safe speed") of the vehicle code.
>
> 2. Whether the trial court erred when it denied [ ] Appellant's motion to suppress because the Commonwealth failed to meet its burden through Corporal Powers' testimony.
>
> 3. Whether the trial court erred when it denied [ ] Appellant's motion to suppress, finding that Corporal Stephen Powers' observations caused him to have a reasonable suspicion that [ ] Appellant was driving under the influence.

Brief of Appellant at 4.

In considering the above claims, we are mindful of our well-settled standard and scope of review in suppression matters:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Because Appellee prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the

context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. As a result, the conclusions of law of the suppression court are subject to plenary review.

*Commonwealth v. Dean*, 940 A.2d 514, 516 (Pa.Super. 2008) (internal quotations and citations omitted). 75 Pa.C.S.A. § 6308 provides in relevant part that:

   **(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). In this regard and relevant to the within discussion, this Court recently reiterated that:

when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be

determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance. **Compare Commonwealth v. Enick**, 70 A.3d 843, 846 (Pa.Super. 2013) (probable cause required to stop for failure to drive on right side of roadway), **Commonwealth v. Brown**, 64 A.3d 1101, 1105 (Pa.Super. 2013) (probable cause required to stop for failure to use turn signal), **Commonwealth v. Busser**, 56 A.3d 419, 424 (Pa.Super. 2012) (probable cause required to stop for failure to yield to emergency vehicles), *and* **[Commonwealth v.]Feczko**, 10 A.3d [1285], 1291 [(Pa.Super. 2010)(*en banc*)] (probable cause required to stop for failure to maintain lanes), *with* **Commonwealth v. Holmes**, 609 Pa. 1, 14 A.3d 89, 96–97 (2011) (reasonable suspicion sufficient to stop to investigate front windshield obstruction), **Commonwealth v. Bailey**, 947 A.2d 808, 812–14 (Pa.Super. 2008) (reasonable suspicion sufficient to stop to investigate faulty exhaust system or muffler); *see also Commonwealth v. Landis*, 89 A.3d 694, 703 (Pa.Super. 2014) (noting that where trooper stopped motorist for failing to drive within a single lane—and not to investigate possible DUI—he needed probable cause to stop).

**Commonwealth v. Salter**, 121 A.3d 987, 992-93 (Pa.Super. 2015), **reargument denied** (Oct. 14, 2015).

Initially, we note that while in his Omnibus Pretrial Motion Appellant challenged only the propriety of the trial court's determination that Corporal Powers had reasonable suspicion to believe he had been driving under the influence of alcohol, for the first time on appeal, Appellant develops an argument that Corporal Powers lacked probable cause to conduct a traffic stop to investigate a violation of Section 3361 of the Motor Vehicle Code. Indeed, Appellant does not mention this Section of the Vehicle Code in his

Omnibus Pretrial Motion or in his Memorandum of Law in support thereof. Having failed to raise this specific issue before the trial court, Appellant has waived it for appellate review. Pa.R.A.P. 302(a) (issues not raised in the trial court are waived on appeal); **_Commonwealth v. Muniz_**, 5 A.3d 345, 352 (Pa.Super. 2010) (this Court will not consider an issue an appellant fails to raise before the suppression court).

Nevertheless, as a discussion of whether Corporal Powers had probable cause initially to stop Appellant for a Vehicle Code violation is relevant to a consideration of whether he had reasonable suspicion to believe that Appellant had been driving under the influence of alcohol, we would necessarily engage in such analysis when deciding the merits of Appellant's second and third issues. However, before doing so, we must consider the effect of the Stipulation into which Appellant and the Commonwealth entered on March 27, 2015. **See**, **supra**. The Pennsylvania rules applicable to stipulations are well-settled:

> parties may bind themselves, even by a statement made in court, on matters relating to individual rights and obligations, so long as their stipulations do not affect the court's jurisdiction or due order of business*. . . .* Stipulations to the admissibility of evidence are common. They do not affect jurisdiction, nor interfere with judicial business or convenience; instead, they aid the court by saving it time which would otherwise be spent on determining admissibility. The courts employ a contracts-law analysis to interpret stipulations, so that the intent of the parties is controlling. The language of a stipulation, like that of a contract, is construed against the drafter. The court will hold a party bound to his stipulation: concessions made in stipulations are judicial admissions, and accordingly may not later in the proceeding be contradicted by the party who made them.

***Tyler v. King***, 496 A.2d 16, 21-22 (Pa.Super. 1985).

As noted above, a provision contained in the Stipulation reads as follows: "[Appellant] hereby stipulates that Corp. Powers had probable cause to arrest him for Driving Under the Influence in this matter." ***See*** Stipulation, dated March 27, 2015, at 2. As such, an application of the aforesaid rules on stipulations to the instant matter suggests that Appellant cannot challenge on appeal whether Corporal Powers satisfied the less stringent standard of reasonable suspicion that he was driving under the influence. Notwithstanding, such finding would be at odds with our Supreme Court's holding in ***Commonwealth v. Eichinger***, 108 A.3d 821, 832 (Pa. 2014) that: "[a] colloquy insuring a knowing and voluntary decision is required any time a defendant stipulates to evidence that virtually assures his conviction because such a stipulation is functionally the same as a guilty plea."

Herein, no such colloquy appears in the record, although Appellant's admission that Corporal Powers had probable cause to arrest him on DUI charges virtually assured his conviction. Indeed, counsel for neither party nor the trial court acknowledged that provision in the Stipulation could have affected the outcome of trial and essentially foreclosed any successful challenge to the suppression court's ruling. Also, Appellant's filing of the instant appeal evinces he did not intend to waive his right to challenge

probable cause for his arrest. Notwithstanding, a review of the record reveals Appellant's arrest was proper.

Section 3361 of the Motor Vehicle Code provides:

**§ 3361. Driving vehicle at safe speed**

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, **when approaching and going around curve,** when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361 (emphasis added).

As it was not necessary for Corporal Powers to stop Appellant's vehicle to establish that he had been driving at an unsafe speed, Corporal Powers needed to possess probable cause prior to doing so. *Salter*, *supra*. Corporal Powers testified he heard a loud screech and when he looked up he observed Appellant's vehicle swerve to the left and make a sharp left turn in an effort to avoid colliding with a fenced wall. N.T., 1/8/15, at 20, 30-31. Appellant's vehicle was the only one on the road at the time, and the conditions were clear. *Id*. at 19, 25. In light of the way Appellant had negotiated the turn, Corporal Powers was concerned he had been driving too fast, and proceeded to effect a traffic stop. *Id*. at 25.

Responsibly "approaching and going around a curve" are "conditions" specifically enumerated in the statute that require a driver to proceed at "a safe and appropriate speed." When Corporal Powers heard a loud screech and observed Appellant swerve to avoid a collision, he had probable cause to stop Appellant's vehicle, as such driving was a violation of the Vehicle Code.

Upon further investigation, Corporal Powers, who had arrested over three hundred individuals for DUI, testified he observed Appellant's glassy, bloodshot eyes and profuse sweating and smelled the odor of alcohol on his person, all classic signs of intoxication. *Id*. at 26-27. In addition, Appellant admitted he "skidded and swerved" to avoid a pothole and that he had consumed at least one alcoholic beverage. *Id*. Although Corporal Powers did not administer field sobriety tests due to Appellant's physical limitations, he did offer a portable breath test which registered .12%. Appellant also submitted to a blood test which revealed his blood alcohol level to be 0.204.[3] *See* Affidavit of Probable Cause, dated 7/6/14.

The trial court found the testimony of Corporal Powers to be credible, Trial Court Opinion, filed 10/6/15 at 6, ¶ 17, and this Court may not substitute its credibility determinations for that of that court. *Muniz*, *supra* at 352. For the foregoing reasons, we conclude Corporal Powers had probable cause to conduct a traffic stop because Appellant had been driving

---

[3] 75 Pa.C.S.A. § 3802(c) categorizes any alcohol concentration above 0.16% as the "Highest rate of alcohol."

at an unsafe speed and, subsequently, for arresting Appellant under suspicion of DUI. *See Commonwealth v. Angel*, 946 A.2d 115, 118 (Pa.Super. 2008) (stating "[p]robable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance.").

Accordingly, we conclude the trial court properly denied Appellant's motion to suppress and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2016