J-S31015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WARREN D. ANDERSON, | |
| Appellant | No. 372 MDA 2015 |

Appeal from the Judgment of Sentence January 27, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003367-2013

BEFORE:  SHOGAN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 18, 2016**

Appellant, Warren D. Anderson, appeals from the January 27, 2015 judgment of sentence entered following his conviction at a bench trial of possession of cocaine, possession of a small amount of marijuana, tampering with physical evidence, and possession of drug paraphernalia. Following our careful review, we affirm.

The trial court summarized the facts of the crimes as follows:

> On May 17, 2013 at approximately noon, Officer Dan Smeck of the Lower Paxton Township Police Department, along with members of the Dauphin County Probation Office and Dauphin County Sheriff's Department, were attempting to serve an arrest warrant for a Mr. Kevin Ramos at 2308 Orange Street in Harrisburg, Pennsylvania.  When Officer Smeck arrived at

---

* Retired Senior Judge assigned to the Superior Court.

2308 Orange Street, he did not get a response at the door. He went to the adjacent house, knocked on the door, spoke to the gentleman who answered, and showed him a photograph of Mr. Ramos. The gentleman indicated that he had seen Mr. Ramos, and that he lived next door. Officer Smeck then went to the neighbor on the other side of 2308 Orange Street, and such neighbor also indicated that Mr. Ramos lived next door. Additionally, it was known that Mr. Ramos rode a bicycle from his house to his work place, and there was a bicycle in the back of 2308 Orange Street. While Officer Smeck was knocking again on the front door of the residence, an officer in the back indicated that someone had come out back, had seen the officers, and had run back inside the house. At that point, Officer Smeck made entry through the front door by kicking it in. The officers located a black male in the living room as soon as they made entry, and he was detained. Officer Smeck testified that when the officers entered the house, they had made a decision to detain everyone in the house for the officers' safety, until the house was secure.

On the second floor of the residence there was a locked bathroom. When the officers made their way in, [Appellant] was standing over the toilet. Officer Smeck testified that a deputy sheriff grabbed [Appellant] and indicated that [Appellant] was dumping marijuana into the toilet. [Appellant] was detained and taken to the living room with the other gentleman. One of the officers handed Officer Smeck a wallet containing an identification card with Mr. Ramos'[s] name on it. At that point, Officer Smeck asked [Appellant] and the other detained gentleman if they knew where Mr. Ramos was. [Appellant] offered no response, and one of the probation officers indicated that it appeared that [Appellant] had something in his mouth. When asked to spit it out, [Appellant] did not comply. One of the probation officers used a [T]aser to "dry stun" [Appellant], and he spit out what was in his mouth. It was determined that [Appellant] had been keeping drugs in his mouth, and [the drugs] were turned over to the Harrisburg City Police. After [Appellant] and the other gentleman were taken away, Mr. Ramos pulled up on a bicycle and was arrested pursuant to the warrant.

Trial Court Opinion, 6/29/15, at 1–2 (internal citations omitted).

Appellant filed a motion to suppress evidence on February 12, 2014. On June 6, 2014, the trial court held a suppression hearing; it denied the suppression motion on October 9, 2014. Following a bench trial, which concluded on January 27, 2015, the trial court sentenced Appellant as follows:

> [A]t Count 1, possession of a controlled substance, substance cocaine, I sentence [Appellant] to be incarcerated for not less than 6 months, no more than 12 months; impose a fine in the amount of $200, and costs of these proceedings.
>
> At Count 2, possession of a small amount of marijuana, I impose a fine in the amount of $150 and costs. Count 3 is a $25 fine and costs.
>
> And at Count 4, I sentence the defendant to a term of incarceration not less than 6 months, no more than 24 months; a fine in the amount of $50, and costs of these proceedings.
>
> The sentence at Count 1 and Count 4 shall run concurrent with each other for an aggregate sentence of 6 to 24 months. This docket shall run consecutive to any and all outstanding matters.

N.T., 1/27/15, at 37.

Appellant filed a timely notice of appeal to this Court on February 25, 2015. On March 13, 2015, the trial court vacated its prior order appointing defense counsel and appointed new, present counsel that day. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following single issue for our review:

> I. Whether the trial court erred in denying Appellant's motion to suppress evidence where police searched Appellant's home without a warrant, did not have permission to enter or search the residence, and where such a search violates the Fourth

Amendment of the United States Constitution and article 1, section 8 of the Constitution of the Commonwealth of Pennsylvania?

Appellant's Brief at 4 (full capitalization and underlining omitted).

Appellant assails the trial court's failure to grant his suppression motion.

> In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the record. *Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa. Super. 2012). This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id*.

*Commonwealth v. Haynes*, 116 A.3d 640, 644 (Pa. Super. 2015). Moreover, on October 30, 2013, our Supreme Court in *In re L.J.*, 79 A.3d 1073 (Pa. 2013), clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing. Here, the suppression hearing post-dates the filing date of *L.J.*, which was held to be prospective; thus, *L.J.* applies to this case. *Commonwealth v. Caple*, 121 A.3d 511, 517 n.1 (Pa. Super. 2015).

Relying upon *Steagald v. United States*, 451 U.S. 204 (1981), Appellant asserts that the drugs found in the residence at 2308 Orange Street should have been suppressed because police did not have a reasonable belief that Kevin Ramos, the subject of the arrest warrant, lived at that address. Appellant is mistaken. As we recently stated in

***Commonwealth v. Romero***, ___ A.3d ___, ___, 2016 PA Super 87, *3 (Pa.

Super. 2016) (filed April 19, 2016):

> [w]here authorities have a reasonable belief that the subject of
> an arrest warrant lives within a given premises, they can enter
> the home and arrest the suspect without a search warrant.
> ***Commonwealth v. Muniz***, 5 A.3d 345 (Pa. Super. 2010).
> ***Compare Commonwealth v. Conception***, 441 Pa. Super. 539,
> 657 A.2d 1298 (Pa. Super. 1995) (where police listed address on
> arrest warrant as possible residence of one of two fugitives, no
> search warrant needed to enter third-party defendant's
> apartment) with ***St[ea]gald v. United States***, 451 U.S. 204,
> 214, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (where authorities
> conclude fugitive may be inside premises, but is not believed to
> be resident of premises, arrest warrant for fugitive inadequate to
> justify search of third-party owner's residence).

In the instant case, Lower Paxton Township Police Officer Dan Smeck

testified that he went to 2308 Orange Street in Harrisburg around noon on

May 17, 2013, to arrest Kevin Ramos. Kevin Ramos was the subject of the

arrest warrant Officer Smeck possessed, and Ramos's address was listed

therein as 2308 Orange Street. N.T. (Suppression), 6/6/14, at 4–6. Officer

Smeck testified that he had "a warrant packet" that contained "the actual

warrant, a photograph of the individual, a criminal history and copy of the

police report." ***Id***. at 6.

The record reveals that Officer Smeck had a reasonable belief that

Kevin Ramos lived at 2308 Orange Street. When he knocked on the front

door and no one answered, Officer Smeck went to the adjacent house to the

right of 2308 Orange Street and spoke to the individual residing there. N.T.

(Suppression), 6/6/14, at 6. The officer showed the neighbor the picture of

Ramos, and the neighbor confirmed that Ramos lived at 2308 Orange Street. *Id*. Officer Smeck then went to the adjacent residence to the left of 2308 Orange Street and showed the photograph of Kevin Ramos. *Id*. at 7. That gentleman also indicated that Kevin Ramos lived at 2308 Orange Street.[1] *Id*. Officer Smeck indicated that he had information from Police Officer Haley Miller, the officer who had filed the police report, contained in his packet, that Kevin Ramos rode a bicycle to work. *Id*. at 7, 13. Other officers at the scene[2] who were positioned in the back of the house, confirmed that there was a bicycle in the rear of the house. *Id*. at 7. Officer Smeck testified that as he continued to knock on the front door and announce his identity, a male exited the back door and ran back inside when he saw police. *Id*. at 7. This information, as well, was conveyed to Officer Smeck from officers positioned in the rear of the building. *Id*. All of these factors support Officer Smeck's reasonable belief that Kevin Ramos resided

---

[1] While the defense attempted to refute Officer Smeck's testimony that he sought an identification of Ramos from the neighbor to the left, that testimony was equivocal. Although the neighbor testified at the suppression hearing that he had no recollection of anyone inquiring about Kevin Ramos on the day in question, which in and of itself is vague, upon cross-examination, when asked if he was "100 percent certain" about his testimony, he replied, "No." N.T. (Suppression), 6/6/14, at 21–22.

[2] Officer Smeck testified that there were "at least 10 law enforcement officials involved" and present at the scene. N.T. (Suppression), 6/6/14, at 6, 8.

at the location.  Officer Smeck then kicked in the front door and entered the premises.  *Id*. at 7–8.

The trial court relied on **Commonwealth v. Muniz**, 5 A.3d 345 (Pa. Super. 2010), in denying Appellant's motion to suppress.  In that case, the appellant claimed that because police entry into an apartment was predicated solely upon an arrest warrant for a different man, and not upon an arrest warrant for Mr. Muniz or a search warrant for the premises, the search was illegal.  *Id*. at 349.  Relying on **Steagald**, Mr. Muniz argued that police did not have a valid basis to enter the apartment.  *Id*. at 350.  Based upon consideration of **Steagald**, **Commonwealth v. Stanley**, 446 A.2d 583 (Pa. 1982), and **Conception**, the **Muniz** Court held that the authorities' entry into the appellant's apartment was not illegal.  **Muniz**, 5 A.3d at 350.

> Resolution of the combination of situations occurred in **Commonwealth v. Conception**, 441 Pa. Super. 539, 657 A.2d 1298 (1995), where we considered the Fourth Amendment rights of a third party when her residence was entered under the mistaken belief that it was also the residence of someone subject to an arrest warrant—a factual scenario nearly identical to this matter.  In **Conception** the police showed up at the defendant's apartment with an arrest warrant for Robert Vargas and Martin Rivera, **and a reasonable belief that they lived at the subject apartment.** *Id*. at 1299.  Instead of Vargas or Rivera, the defendant opened the door, stated that she did not know either man and refused the police entry into the premises.  *Id*.  Nevertheless, the police forcibly entered the apartment and searched the premises for Vargas and Rivera.  *Id*.  As a result of that search, the police found marijuana in plain view.  *Id*.  The defendant was consequently placed under arrest.  *Id*.
>
> The defendant in **Conception** relied on **Steagald** for the position that, notwithstanding the arrest warrant for Vargas and Rivera, the police were required to have a valid search warrant

to search her premises. ***Id***. at 1300. However, in the ***Conception*** decision we distinguished ***Steagald***, explaining that in ***Steagald*** the police understood the premises to belong to a third party. In ***Conception***, however, the police believed the apartment to be the residence of one of the subjects of the arrest warrant (*i.e.* Vargas). Therefore, although the individual asserting the Fourth Amendment rights in ***Conception*** was the third-party (as in ***Steagald***), **the person being searched for was believed to reside at the premises**. Under this analysis, we held that ***Stanley*** was more applicable. **Thus, because the authorities had a reason to believe that a subject of the arrest warrant lived within the premises, they did not need a search warrant to enter the premises to search for the suspects**. ***Id***. at 1300–1301.

***Muniz***, 5 A.3d at 351 (footnote omitted) (emphases added). The same is true in the present case.

In the case *sub judice*, the trial court explained:

[O]nce the officers made entry into 2308 Orange Street, they lawfully searched the residence for Mr. Ramos. They encountered two men, one of whom was [Appellant], and observed him flushing drugs down the toilet. [Appellant's] illegal drugs were discovered while he was lawfully in custody, and would have inevitably been discovered.

Trial Court Opinion, 6/29/15, at 4–5.

As we stated in ***Romero***:

[b]ecause the arrest warrant for [a third party] was valid, the authorities had the legal basis to enter [Romero's] residence without a search warrant, despite the fact that [the third party] was not inside the home. ***Muniz***, *supra*; ***Conception***, *supra*. Therefore, the entry of the residence did not violate [Romero's] Fourth Amendment rights and the court improperly suppressed the evidence uncovered during the search of [Romero's] residence.

***Romero***, ___ A.3d at ___, 2016 PA Super 87 at *5. Thus, the trial court properly denied suppression in this case.

- 8 -

Judgment of sentence affirmed.

Judge Strassburger joins this Memorandum.

Judge Ott files a Concurring Memorandum in which Judge Strassburger joins.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2016